AO 91 (Rev. 11/11)  Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

# UNITED STATES DISTRICT COURT
for the

United States Courts
Southern District of Texas
**FILED**

NOV 3 2015

David J. Bradley, Clerk of Court

United States of America )
v. )
)
) Case No.
TAMARA MITCHELL )
)
) **H15-1494M**
)
_____ )
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  February 2014 to Sept 18, 2015   in the county of        HARRIS        in the
   SOUTHERN     District of         TEXAS          , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1343, 1349 | Conspiracy to commit Wire fraud, a felony violation of which makes it a crime to conspire with others to transmit writings or signals by means of a wire in interstate commerce for the purpose of a scheme to defraud. |
| 21, U.S.C §§ 841(a)(1), 841(b)(1)(E), and 846. | Conspiracy to distribute a schedule III controlled substance outside the scope of professional practice and not for a legitimate medical purpose |

This criminal complaint is based on these facts:

SEE ATTACHMENT A, AFFIDAVIT OF PROBABLE CAUSE

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Christopher Gann
Printed name and title

Sworn to before me and signed in my presence.

Date:  November 3, 2015

_____
Judge's signature

City and state:         HOUSTON, TEXAS                 John Froeschner United States Magistrate Judge
Printed name and title

# AFFIDAVIT
## Attachment A

I, Christopher Gann, of the United States Food and Drug Administration's Office of Criminal Investigations, hereafter referred to as the Affiant, being duly sworn, depose and state the following:

I am a Special Agent with the U.S. Food and Drug Administration's Office of Criminal Investigations (FDA-OCI). I have been employed by FDA-OCI since March 2014, and I am currently assigned to the Dallas Resident Office's Houston Domicile. Since joining FDA-OCI, I have participated in multiple investigations involving violations of federal law including; introduction of an unapproved drug into interstate commerce, adulterated and misbranded drugs, including violations pertaining to the illegal production, distribution, receipt and possession of counterfeit pharmaceutical drugs. I have received training regarding the trafficking of counterfeit goods, including the manufacture and distribution of counterfeit pharmaceuticals. Prior to becoming an FDA Special Agent, I was employed as a Special Agent with Homeland Security Investigations for thirteen (13) years and as a Houston Police Officer for seven (7) years. I have conducted narcotics and money laundering investigations as well as various other violations of both state and federal law.

I have received courses of instruction from the Food and Drug Administration Office of Criminal Investigations, Homeland Security Investigations, the Drug Enforcement Administration, and the Department of the Treasury relative to investigative techniques and conducting narcotics investigations and financial crimes. I have conducted investigations which have resulted in the arrest of individuals who have smuggled, received, and distributed controlled substances and other dangerous drugs.

I am making this Affidavit in support of Criminal Complaint to be presented to the United States District Court for the Southern District of Texas in the matter of United States v. **Tamara Mitchell**, DOB: 8-13-66.

## OFFENSES

As a result of my personal participation in this investigation, through interviews of witnesses and the review of government records, I believe there is probable cause that evidence of the following crimes will be found on the premises named herein, concerning the following federal offenses:

A. <u>Conspiracy to commit Wire fraud</u>, a felony violation of 18 U.S.C. 1343, 1349 which makes it a crime to conspire with others to transmit writings or signals by means of a wire, radio, or television in interstate commerce for the purpose of executing a scheme to defraud.

B.  Conspiracy to distribute a schedule III controlled substance, Ketamine, outside the scope of professional practice and not for a legitimate medical purpose. A felony violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(E), and 846.

## Probable Cause in Support of Affidavit

On April 29, 2015, the Houston FDA-OCI Office received a referral from the FDA Regulatory Division regarding allegations that Diamond Pharmacy, partially owned by Tamara Mitchell, dispensed a compound pain cream, without a valid prescription, to an individual in Houston, Texas that resulted in the death of that individual in November of 2014. On April 30, 2015, the FDA Regulatory Division forwarded Affiant a copy of the MedWatch report filed by the mother of the deceased, Raquel Gonzales. In the report, Mrs. Gonzales alleges that her daughter, Desiree Ford, signed up as a client for Diamond Pharmacy, and the pharmacy mailed Desiree two compound prescriptions without Desiree Ford having ever seen a doctor. Mrs. Gonzales stated that Desiree was found dead after taking the creams. The toxicology report indicated that Desiree died from the toxic effects of Ketamine and Cyclobenzaprine. Both of these medications are listed on the Diamond Pharmacy website as being utilized in their compound pain cream they are dispensing.

On May 5, 2015, Affiant and Kenneth Crowe interviewed Richard Carlton Ford.[1] Mr. Ford stated that his daughter Desiree informed him that she had been recruited by Diamond Pharmacy to sell their compounded pain creams.[2] She stated she would receive $100 for every person she referred. Mr. Ford stated Desiree wanted to refer him so she could collect the referral fee. Desiree informed Mr. Ford that they did not have to see a doctor and there were no out of

---

1 Mr. Ford is the father of Desiree Ford, who died from Ketamine toxicity. The source was believed to be Diamond Pharmacy, which was partially owned by Tamara Mitchell, who is also the owner of Save-Rite Pharmacy.

2 Affiant has lab reports which show that the compound creams contain prescription drugs and controlled substances, such as Ketamine, and require a legitimate prescription to dispense.

pocket costs.[3] Desiree stated that she needed to submit her father's Cigna insurance card. Mr. Ford stated that he was skeptical and told Desiree he would think about it. Mr. Ford stated he received a call from "Curtis" (who recruited Desiree) and "Curtis" stated there would be no out of pocket cost, Diamond Pharmacy would bill his insurance, and then he would get his product. "Curtis" did not mention that Mr. Ford would have to see a doctor. Mr. Ford stated he contacted Desiree and told her to submit his insurance card to Diamond Pharmacy. Mr. Ford stated on November 13, 2014, he received a text message from Desiree to come pick up his medicine from her apartment.

Affiant obtained a sample of the cream that Diamond Pharmacy marketed to the public from Desiree's mother, Raquel Gonzales. Affiant was informed by Desiree's mother that Curtis, the Diamond Pharmacy sales representative, had samples that he used when recruiting customers. She obtained one of the samples because she suspected it may have been the source of Ketamine that killed her daughter. On or about April 30, 2015, Affiant submitted the sample labeled "Sample Combo Pain Cream" to the FDA Forensic Chemistry Center (FCC) and it tested positive for Ketamine, a schedule III controlled substance.

## OTHER DIAMOND PHARMACY CUSTOMERS

Affiant interviewed customers of Diamond Pharmacy to determine if Ketamine was being distributed without medical authorization. Affiant interviewed Eric and Kim Endicott, who stated that on or about April 22, 2014, an employee of Diamond Pharmacy sold them compounded creams and they did not have to visit a doctor.

---

3 Pursuant to Title 21, U.S.C. § 841(a), *et seq.*, and Title 21, Code of Federal Regulations, § 1306.04, a prescription for a controlled substance is not legal or effective unless it is issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice. A practitioner acting in the usual course of professional practice must conduct at least one in-person medical evaluation of the patient.

Affiant discovered that Diamond Pharmacy, under the direction of Tamara Mitchell, electronically billed the Endicott's insurance provider, Catamaran, located in Schaumburg, Ill, over $7000 for creams containing prescription drugs and controlled substances despite the fact the neither person was referred by a doctor to the pharmacy or visited a doctor to obtain the prescription. Affiant determined that from April 2014 to June 2014, Diamond Pharmacy, under the direction of Tamara Mitchell, electronically billed Catamaran for approximately twelve (12) creams containing prescription drugs and Ketamine, though neither Eric or Kim Endicott visited a doctor. Diamond Pharmacy and Tamara Mitchell received over $43,000 by electronic funds transfer from Third Party Station, an entity located outside the State of Texas, on behalf of Catamaran (an insurance provider) for providing creams. Affiant obtained the Diamond Pharmacy prescription bottle containing the cream from the Endicott's and submitted the samples to the FDA forensic Chemistry Center on or about May 29, 2015. The samples were positive for Ketamine, a schedule III controlled substance.

## DIAMOND PHARMACY

On May 6, 2015, Affiant spoke with FDA Consumer Safety Officer (CSO) Margaret Annes, who conducted a regulatory audit of Diamond Pharmacy. CSO Annes stated Tamara Mitchell informed her that approximately 70 percent of the prescriptions Diamond Pharmacy filled come from a single doctor, Michael Kelly, and the prescriptions are for pain creams. According to the Diamond Pharmacy Compound Dispensing Log, there have been thousands of prescriptions filled at Diamond Pharmacy since March 2014 written by Dr. Kelly to various patients.

On May 12, 2015, FDA-OCI, DEA, State Board of Pharmacy, and the Houston Police

Department executed a federal search at the medical practice of Dr. Kelly in Houston, Texas.[4] Affiant interviewed Dr. Kelly, who stated that he is the prescribing physician for Diamond Pharmacy and that he is the main prescribing entity for Diamond Pharmacy. Dr. Kelly stated he did not have any face-to-face consultations or a doctor/patient relationship with the patients he prescribed the compounded medications that are filled at Diamond Pharmacy.[5] Dr. Kelly stated that he is paid several thousand dollars a month from Diamond Pharmacy and the money is electronically deposited into his business checking account. Dr. Kelley voluntarily relinquished his DEA license to write prescriptions for controlled substances.

On or about May 15, 2015, Affiant executed a search warrant at Diamond Pharmacy in Houston Texas.[6] During the execution of the warrant Affiant interviewed the Pharmacist Technician, Priscilla Orosco. Orosco stated the typical process at Diamond starts with the patient faxing or emailing a completed medical questionnaire to Diamond Pharmacy, or sending their biographical and insurance information via text message. Ms. Orosco would fill out and sign the patient medical questionnaire for the patient. Orosco further explained that Diamond Pharmacy keeps blank medical questionnaire forms from Dr. Kelly's office and keeps blank prescription pads with the doctor's signature already on the form. Ms. Orosco confirmed Dr. Kelly's statement that patients were issued prescriptions for controlled substances, such as Ketamine, without visiting a doctor.[7]

---

4 On May 8, 2015, United States Magistrate Judge Frances H. Stacy issued a federal search warrant for the medical practice of Dr. Kelly located at 17115 Red Oak Dr., Suite 210A, Houston, TX 77090.

5 A prescription is not a piece of paper by which physicians are directing the issuance of drugs to patients who do not need it, persons they have never met, or individuals who do not exist." *United State v. Smith,* 573 F.3d 639, 651 (8th Cir 2009), quoting *United States v. Nazir,* 211 F. Supp. 2d. 1372, 1375 (S.D. Fla 2002).

6 On May 15, 2015, Affiant obtained a signed federal search warrant (Case# H15-650M) from U.S. Magistrate Judge Nancy Johnson for the premise of Diamond Pharmacy located at 2900 Hillcroft, Suite B, Houston, TX 77015.

7 On July 6, 2015, Affiant received the records from Freedom Pharmaceuticals pursuant to a grand jury request. A

During the execution of the warrant at Diamond Pharmacy, agents seized blank prescription pads with Dr. Kelly's and Nurse Practitioner Karen Lopez's signature on the pad. The prescription pads contained a typed box regarding the quantity of Ketamine to include in the compounding prescriptions. Agents also seized 6.4 kilograms of raw Ketamine from inside the pharmacy and documentation regarding the delivery of Ketamine to Diamond Pharmacy, which was partially owned by Tamara Mitchell. Affiant notes that Ketamine is a schedule III controlled substance and can only be dispensed with a valid prescription and after a legitimate examination by a doctor.[8]

Affiant or agents working with affiant submitted materials obtained from Diamond Pharmacy to the DEA lab for analysis on or about May 15, 2015. The following samples were submitted and tested positive for Ketamine; 1 prescription pump bottle labeled "Joint 4/28/15", 1 prescription pump bottle labeled "Musculoskeletal P1", 1 sample container labeled "Musculo Pain Cream", 11 sample containers labeled "Combo Pain Cream", 10 sample containers labeled "Neuropathic Pain Cream."

During the search of Diamond Pharmacy, agents seized an Amended Stock and Business Purchase agreement showing that on April 23, 2015, Tamara Mitchell purchased <u>Save-Rite Pharmacy</u> from Eugene Olewe for the amount of $120,000.00. Agents seized a Freedom Pharmaceuticals Controlled Substances Profile signed by Christian Schwalm (Tamara Mitchell's

---

review of the records showed that from February 2014 through April 2015, Diamond Pharmacy purchased 134 kilograms of Ketamine, a Schedule III controlled substance.

8 Under the Controlled Substances Act, Title 21, United States Code, § 841(a), *et seq.*, and Title 21, Code of Federal Regulations, § 1306.04, a prescription for a controlled substance is not legal or effective unless it is issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice. A practitioner acting in the usual course of professional practice must conduct at least one in-person medical evaluation of the patient, which means a medical evaluation that is conducted with the patient in the physical presence of the practitioner. (Title 21, United States Code, § 829(e))

partner) on April 24, 2015 for Save-Rite Pharmacy listing himself as the owner and Eugene Olewe as the Pharmacist-In-Charge. In addition, agents seized numerous other documents providing evidence that Diamond Pharmacy was engaging in an illegal and fraudulent scheme to utilize and pay sales representatives. The representatives recruited patients/customers, regardless of the medical need. The sales representative's only goal was to find patients that had the "right insurance plan." Diamond Pharmacy employees, under the direction of Tamara Mitchell, prepared medical questionnaires and submitted the false prescription information to a patient's insurance plan for payment. Diamond Pharmacy employees, under the direction of Tamara Mitchell, actually filled out the blank prescription pads that were pre-signed by a doctor on the Diamond Pharmacy payroll. A prescribing physician, such as Dr. Kelly, received about $5,000 a month though he never physically saw a patient.

Affiant interviewed a former sales representative for Diamond Pharmacy, Alyssa Hunt, who provided a written statement outlining her involvement with Diamond Pharmacy. Hunt stated that on May 11, 2015 she was directed by Christian Schwalm, Tamara Mitchell's partner in Diamond Pharmacy, to meet him at his house. Upon arrival, Hunt was met by Christian Schwalm, Silvia Schwalm, and Tamara Mitchell. Hunt was directed to destroy all evidence at her house regarding her affiliation with Diamond Pharmacy and if questioned by the FDA, to lie and state she is only a patient. Hunt was advised that they (Christian and Silvia Schwalm and Tamara Mitchell) had been staying late at Diamond Pharmacy cleaning hard drives and transferring data to Save-Rite Pharmacy because insurance companies were "picking on" Diamond Pharmacy.

On June 2, 2015, Affiant and DEA Diversion Investigator Bigler interviewed Nurse Practitioner Karen Lopez regarding prescriptions filled under her prescription authority at

Diamond Pharmacy. Lopez stated approximately one year ago, she entered into an agreement with Christian Schwalm that Diamond Pharmacy would fax her patient medical questionnaires to review and she would only need to contact Diamond Pharmacy, if she observed a potential medical issue. Lopez stated she never contacted Diamond Pharmacy regarding patients obtaining compounded pain creams. *Lopez admitted she did not physically examine any of the patients that she approved for prescriptions.* Lopez stated that she knew Ketamine was in the creams, but that she did not know Ketamine was a controlled substance.

Lopez stated that once a month, she would meet Christian and Silvia Schwalm, sign a pad of blank prescriptions, and receive her $5,000 monthly compensation. Lopez stated Christian Schwalm was opening a new pharmacy under the name Save-Rite Pharmacy. Christian Schwalm gave Lopez a blank prescription pad from Save-Rite Pharmacy and she signed her name to each blank prescription. Christian Schwalm gave Lopez a check for $5,000 and departed. At the conclusion of the interview, Lopez voluntarily surrendered her DEA registration. In addition, on June 2, 2015, Lopez sent Christian Schwalm a text message that read, "Please do not use my pads for scripts as of today. I've got the DEA and FDA here and they just revoked my DEA".

## SAVE-RITE PHARMACY

On May 20, 2015, DEA Investigators interviewed Eugene Olewe at <u>Save-Rite Pharmacy</u>. Olewe stated he still owns Save-Rite Pharmacy even though there is a signed purchase agreement with Tamara Mitchell. Olewe claimed that Mitchell had not paid him and that he was NOT planning on compounding any specific type of drug, yet. Olewe confirmed that he ordered Ketamine and Tramadol for compounding with the assistance of Tamara Mitchell and Christian Schwalm, but no compounding had occurred at Save-Rite Pharmacy, yet.

On May 21, 2015, DEA Investigators went to the pharmacy across the street from

Save-Rite Pharmacy (Barker Cypress Pharmacy and Home Care Equipment) and spoke with the owner, Cynthia Ngwada, who stated, a month ago, a lady named "Tammy" came into the pharmacy and stated she is the owner of Save-Rite Pharmacy. "Tammy" asked Ngwada if she was interested in purchasing the remaining stock of drugs, because Save-Rite Pharmacy was converting to a compounding pharmacy. (Note: As recently as October 28, 2015, Affiant confirmed that Save-Rite Pharmacy, located at 1870 Barker Cypress Rd., Houston, Texas 77084 was in business with the same employees from Diamond Pharmacy, such as Priscilla Orosco and Tamara Mitchell's relatives, Jonathan and Marvin Mitchell.[9])

On August 11, 2015, Affiant and others executed a federal search warrant at Save-Rite Pharmacy in Houston, Southern District of Texas. During the search agents discovered the same compounding creams that were present at Diamond Pharmacy. Agents seized 2 brown prescription pump bottles with a handwritten label "Combo", 1 brown prescription pump bottle with the original label torn off, handwritten label "Neuro", 2 brown prescription pump bottles for patient Mathew Gallington for "Neuropathic Pain Cream" and "Combination Cream." The materials were submitted to the FDA Forensic Chemistry Center on or about August 11, 2015 and all were found to contain Ketamine.

On June 17, 2015, Affiant was contacted by Alyssa Hunt, who stated a former Diamond Pharmacy patient of hers, Kimberly Swann, recently received a package from Save-Rite Pharmacy containing compounded pain creams. Hunt forwarded Affiant a text message that contained a picture of a Save-Rite insert that was located inside Swann's Save-Rite Pharmacy package. The card read, "Diamond Pharmacy now has a sister location, Save-Rite Pharmacy!!!

---

9 The identities of the employees were confirmed through vehicle registrations. Affiant also has personal knowledge from examination of Tamara Mitchell's e-mails and from material obtained at Diamond and Save-Rite Pharmacies that Jonathan Mitchell and Gabby Ham Mitchell are relatives of Tamara Mitchell and that they communicate with Tamara Mitchell and Christian Schwalm by text and/or other electronic means.

You'll be receiving the same quality products that you have been receiving from Diamond Pharmacy, but your prescription labels may say Save-Rite Pharmacy."

On June 17, 2015, Affiant interviewed Kimberly Swann. Swann stated her cousin, Jennifer Moody, approached her in January 2015 regarding pain creams Moody was promoting for Diamond Pharmacy. Moody explained to Swann that you did not have to see a doctor and there is no cost to include a co-pay, if your insurance approves the creams. Swann provided Moody a copy of her insurance card, but neither Swann, nor any of her family members, saw a doctor or filled out any forms. Swann stated a couple of weeks later, Moody delivered a package from Diamond Pharmacy that contained pain creams for her, her husband, and her twin boys. A month later, Moody delivered another package from Diamond Pharmacy that contained pain creams for all of her family members. Swann stated this past weekend, (June 13, 2015) she received a package from Save-Rite Pharmacy which contained four pain creams, four pharmacy prescription receipts, informational card, and a letter from Save-Rite Pharmacy. Swann stated she threw everything away except for the four prescription receipts. Affiant showed Swann a picture of the above-mentioned Save-Rite insert and Swann stated she took the photograph and forwarded it to Moody. Affiant showed Kimberly and Kenneth Swann copies of their medical questionnaires obtained from Karen Lopez and they both stated they did not fill out and sign the forms.[10] Kimberly Swann turned over the four prescription receipts from Save-Rite Pharmacy for Kenneth Swann. The receipts were for Anti-Inflammatory Cream, Combination Cream, Neuropathic Pain Cream, and Eczema Cream with a fill date of May 4, 2015 and authorized by Karen Lopez.

---

10 Affiant notes that the customer received the compounded creams from Save-Rite Pharmacy under the prescription authorization of Karen Lopez though Diamond Pharmacy had been notified that she could no longer write prescriptions. Save-Rite continued to refill prescriptions despite the notifications.

From the time period between July 6 and July 10, 2015, surveillance of Save-Rite Pharmacy conducted by DEA revealed the same three vehicles consistently parked in front of the business between the hours of 9:00 A.M. and 4:00 P.M. A black Acura SUV that appeared to be driven by John Mitchell, a black BMW sedan/crossover that appeared to be driven by Gabriela "Gabby" Ham, and a black Nissan sedan that appeared to be driven by Priscilla Orosco. Orosco, Ham, and John Mitchell are all former employees of Diamond Pharmacy.

On July 16, 2015, Affiant and DEA Diversion Investigator Bigler interviewed a former customer of Diamond Pharmacy, Stacy Kroll, who continued to receive prescription medication from Save-Rite Pharmacy. Kroll stated her daughter, Keytan Strong, was recruited approximately one year ago to market and sell topical pain creams for Diamond Pharmacy. Kroll was informed by Strong that the creams are free, if approved by insurance, and no doctor visit is required. Kroll stated she provided a copy of her husband's insurance card to Strong and did not fill out any medical forms or see a doctor. Kroll stated that she, her husband, and their children received pain creams from Diamond Pharmacy every month for approximately 6 months. The last package from Diamond Pharmacy arrived in April 2015. Kroll stated that at the end of June 2015, she received approximately 7 packages from Save-Rite Pharmacy and she contacted her daughter, Keytan Strong, to pick up the packages. Kroll stated she kept one package for herself. Kroll turned over to Affiant several bottles of compounded pain creams from Save-Rite Pharmacy. The bottles of compounded cream from Save-Rite Pharmacy were Combination Cream (labeled to contain Ketamine), Musculoskeletal Cream (labeled to contain Ketamine), Eczema Cream, and Antifungal Cream. According to the labels, the prescriptions were filled on May 26, 2015 and authorized by Karen Lopez. The postmark on the Save-Rite package obtained

from Kroll showed a postmark date of June 26, 2015.[11]

On July 16, 2015, Affiant and DEA Diversion Investigator Bigler interviewed Keytan Strong, a former sales representative and patient of Diamond Pharmacy. Strong stated her mother, Stacy Kroll, called her three weeks ago and stated she received several packages from Save-Rite Pharmacy. Strong stated that she and Kroll used to receive pain creams from Diamond Pharmacy but had not received a package in a few months. Keytan contacted Save-Rite Pharmacy and spoke with Tamara Mitchell. Keytan asked Mitchell why she was not being compensated as a former sales representative of Diamond Pharmacy, if her patients were now having prescriptions filled at Save-Rite Pharmacy. Mitchell informed Strong to meet with her at the pharmacy to discuss the issue further.

During the beginning of July 2015, Strong met with Tamara Mitchell and Orosco at a restaurant located in the same business strip-center as Save-Rite Pharmacy. Tamara Mitchell explained that she could not compensate Strong since it was illegal for Alyssa Hunt to have subcontractors such as Strong. Mitchell offered Strong a salaried position as Marketing Director of Save-Rite Pharmacy and stated she could start in two weeks. Mitchell also advised Strong she owns Save-Rite Pharmacy.

On October 26, 2015, Affiant conducted an interview with Dr. Michelle Legall at her medical practice located at 18321 W. Lake Houston Parkway, Suite 310, Humble, TX regarding her recent association with Save-Rite Pharmacy. Dr. Legall, a licensed medical doctor, explained that she was informed by a patient, Bryan Bittick[12], that Save-Rite Pharmacy was

---

11 Affiant notes the delivery of the compounded creams by Save-Rite under the prescription of authority of Karen Lopez was after Diamond Pharmacy received notice that Lopez could not write prescriptions.

12 Bryan BITTICK is a known former Sales Representative for Diamond Pharmacy and Save Rite Pharmacy.

seeking a Medical Director. Dr. Legall stated that she agreed to meet the owner of Save Rite Pharmacy, Tamara Mitchell.

In late August, or early September 2015, after Dr. Kelly and Nurse Practitioner Lopez informed representatives of Diamond Pharmacy that they had relinquished their ability to write prescriptions, Tamara Mitchell met with Dr. Legall at Legall's office. Tamara Mitchell explained to Dr. Legall that she was seeking a new Medical Director for Save Rite Pharmacy to sign prescriptions for compounded pain creams. Tamara Mitchell further explained that the former Medical Director for Save-Rite Pharmacy retired. Tamara Mitchell informed Dr. Legall that she needed prescription authority for patients that had already seen a doctor and she needed Dr. Legall to authorize the refills.[13] Tamara Mitchell told Dr. Legall she had 10 patients that needed a refill immediately. Dr. Legall stated to agents that she agreed to authorize the refills but informed Tamara Mitchell that she would need to conduct an in-person evaluation of the patient in the near future. Tamara Mitchell stated that she would give the patients Dr. Legall's information to schedule an appointment. Dr. Legall stated that she has not received a phone call from a Save-Rite Pharmacy patient to schedule an appointment.

Regarding compensation from Save-Rite Pharmacy, Dr. Legall stated she signed a Medical Director Agreement with Tamara Mitchell that would compensate her $5,000.00 a month for her services. Dr. Legall stated she has received two payments from Save-Rite Pharmacy.[14] Dr. Legall stated she has conducted no in-person or phone consultations with any of the patients referred by Save-Rite Pharmacy. Dr. Legall stated she had no knowledge that any

---

13 Affiant notes that the claim of Mitchell to Legall was false. Based on the investigation, Dr. Kelly and nurse practitioner Lopez were medical directors for Diamond Pharmacy and they did not examine patients to issue the compounding creams.

14 Dr. Legall provided Affiant the original signed Medical Director Agreement between Dr. Legall and Tamara Mitchell signed on August 28, 2015 by both Tamara Mitchell and Dr. Legall.

of the prescriptions she authorized had controlled substances in the medication.[15] Dr. Legall stated she authorized approximately twenty prescriptions to be filled at Save-Rite Pharmacy during the past two months. Dr. Legall received the "patient file" via fax from Save-Rite Pharmacy and she signed the prescriptions to fax back to Save-Rite Pharmacy.[16]

## CONCLUSION

Based on the above information, I believe probable cause exists to arrest Tamara Mitchell for the above referenced offenses.

_____
Christopher Gann
Special Agent, FDA-OCI

Subscribed and sworn before me this ___3___ day of November, 2015 in Houston, Texas, and I find probable cause.

_____
JOHN FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

15 Term "prescription" in provision of Food, Drug and Cosmetic Act requiring written prescription of licensed practitioner for dispensing of certain drugs, in common parlance, means only a bona fide order—i.e., directions for the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor—and does not include pieces of paper by which physicians are directing the issuance of a medicine, remedy, or drug to patients who do not need it, persons they have never met, or individuals who do not exist; "prescription" cannot be defined as mere piece of paper signed by a doctor for drugs, no matter how fraudulent. Federal Food, Drug and Cosmetic Act, § 503(b)(1), as amended, 21 U.S.C.A. § 353(b)(1).

16 Affiant notes that Diamond Pharmacy, Save-Rite Pharmacy, Tamara Mitchell, Christian Schwalm and employees of Diamond and Save-Rite Pharmacies used electronic communications, such a faxes, texts and e-mails to conduct the business/fraud scheme.